**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jacob Aikens,                                           Civil No. 24-569 (DWF/DTS)

               Plaintiff,

v.                                                                  **MEMORANDUM**
                                                              **OPINION AND ORDER**

Devinn Metz, *in Individual and Official*
*Capacities*,

               Defendant.

## INTRODUCTION

This matter is before the Court on a motion for summary judgment brought by

Defendant Richfield Police Officer Devinn Metz.  (Doc. No. 22.)  For the reasons set

forth below, the Court grants Defendant's motion.

## BACKGROUND

Plaintiff Jacob Aikens brings this action against Officer Metz, asserting a single

claim for excessive force in violation of his Fourth Amendment rights.  (Doc. No. 1

¶¶ 25-30.)  The case stems from events that occurred on October 2, 2023.[1]  At

approximately 12:30 a.m. that day, Minnesota state trooper Allen Thill pulled Aikens over

---

[1]     To detail the factual background in this case, the Court reviewed and relies on
footage from the body-worn cameras and squad video submitted by Defendant.  (Doc.
Nos. 24-2, 24-3, 24-7, 24-8, 24-10, 24-11.)  Defendant also submitted various police
reports.  (Docs. No. 24-4, 24-5, 24-12.)  The Court has reviewed the reports and includes
a few details for purposes of summarizing the events.  When a police report is relied
upon, that is noted.

in his car after observing him speeding, swerving, and failing to stop at a red light. Thill reported that Aikens had a "strong odor of an alcoholic beverage" and "bloodshot eyes." (Doc. No. 24-4 at 5.)

Aikens at times responded to Trooper Thill's questions and at other times refused to speak. Thill instructed Aikens to exit his vehicle and proceeded to perform field sobriety tests. Aikens complied at first and told Thill that he had a back injury. When Thill was preparing to administer a breath test, Aikens began to argue and refused to take the test. Nicholas Hanson, a second state trooper, arrived on the scene. Thill again asked if Aikens would take the breath test, but Aikens refused. Thill told Aikens he was under arrest for driving while intoxicated and both troopers reached for and grabbed Aikens's arms. Aikens resisted and fought to break free. During a struggle, Thill was knocked or fell to the ground, and Hanson's body camera was knocked from his uniform. Aikens broke free and ran away.

Trooper Hanson ran after Aikens and Thill returned to his squad car. Hanson made a call over the radio asking for assistance. Additional troopers and officers from multiple jurisdictions arrived, including Officer Mike Bengston and his K-9, who joined the search for Aikens. As they searched, Officer Metz was in a perimeter spot. (Doc. No. 24-12 at 4.) At 1:02 a.m., the K-9 picked up a scent and led the officers to a large pond in someone's backyard. An officer pronounced that Aikens was under arrest and repeated an earlier K-9 announcement that Aikens should come out or risk being bitten.

At 1:04 a.m., the K-9 alerted near the edge of the water and Officer Bengston stated: "Come out now, we can see the water moving, man!" and "Come out now, you

are under arrest." Officer Kothman drew his gun and yelled at Aikens to show his hands and to come out. He directed his flashlight into the water and saw Aikens submerged up to his neck in the pond several feet from shore. At 1:05 a.m., Officer Kothman directed Aikens to "Come to me!" The officers continued to instruct Aikens to come out of the pond. Aikens emerged on the bank of the pond and Officer Kothman grabbed his arm. Aikens claimed he could not use his feet and struggled to get out of the water. He repeated "hold on, hold on, my back" and eventually the officers helped to pull him out of the pond. Once out, Aikens asked "What am I under arrest for, sir?" and an officer yelled, "Stop moving" and "Put your hands behind your back now!" Aikens was not cooperating with the commands and continued to ask why he was under arrest.

At roughly 1:06 a.m., Officer Metz arrived on the scene at the edge of the pond. As he approached, the officers were struggling to handcuff Aikens on the ground. Trooper Hanson's finger was lacerated during the struggle. (Doc. No. 24-5 at 2.) In his deposition, Aikens acknowledges that he was resisting by refusing to place his hands behind his back. (Doc. No. 24-6 at 7.) Officer Metz assisted in restraining Aikens. When the officers were able to place the handcuffs on Aikens, they instructed him to stand, but he responded, "I can't, my back, man." Aikens stood briefly and then went to his knees and again complained about back pain, explaining that he had a pinched nerve.

Officer Metz and Trooper Hanson were able to get Aikens into a standing position and, while on either side of Aikens, they began to walk up the sloped yard towards the squad cars. Seconds later, Aikens stopped walking, bent over, and appeared to stiffen his legs. Aikens claims he was trying to maintain his balance and, at his deposition, he

explained that he was having difficulty because of his back pain and because his pants were sagging and wet. (*Id.* at 8-9.) During his deposition, Officer Metz testified that he felt Aikens pulling away, bending over, and staggering before Aikens stopped moving. Officer Metz further testified that he did not know whether Aikens was trying to regain his balance or resist being moved. (Doc. No. 24-9 at 7-9.) Officer Metz testified that when he felt Aikens pulling away, he also did not know whether Trooper Hanson had let go or lost control of Aikens. (*Id.* at 10.) Officer Metz claims he decided to bring Aikens to the ground to gain control, fearing that they were losing control of Aikens. (*Id.* at 7, 8.)[2] At the same moment that Officer Metz attempted to bring Aikens to the ground, the video shows that Trooper Hanson, who was positioned to the left but also slightly behind Aikens, appears to lose his balance and his foot gets tangled with Aikens' left foot. All three men then slip and fall to the ground together. Aikens landed on his head and shoulder. Officer Metz fell partially on top of Aikens. Aikens testified that he knew right away that something was wrong and that he felt a crack in his neck. (Doc. No. 24-6 at 9.) Aikens claims that Officer Metz then used his weight on his back when he got up and that is when Aikens felt pain in his neck. (*Id.*)

Troopers and officers then grabbed Aikens's arms and legs and carried him and placed him on the ground near the squad cars. An ambulance was called and paramedics

---

[2]     According to Metz's incident report, Aikens stopped walking, pulled away from Metz, and flexed his arms. (Doc. No. 24-12 at 4.) Further, Officer Metz claims that he did not feel another officer holding onto Aikens's left side, so he decided to bring Aikens to the ground to gain control. (*Id.*)

took Aikens to the hospital. Aikens eventually underwent surgery to repair a fracture in his cervical spine, which Aikens claims was caused by the fall on that night. (Doc. No. 1 ¶ 20.)

## DISCUSSION

### I.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Qualified Immunity

Officer Metz submits that he is entitled to qualified immunity on Aikens's excessive force claim because his use of force was objectively reasonable.  The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

To overcome the defense of qualified immunity, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."  *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).  The Court has discretion to decide which qualified immunity prong to consider first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.   Constitutional Violation

The Court begins by evaluating Aikens's claim that Officer Metz violated his right to be free from excessive force when he took Aikens to the ground during his arrest.  The Court evaluates excessive force claims under an objective-reasonableness test. *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In determining whether the use of force is "reasonable" under the Fourth Amendment, a court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's

6

interests at stake. *Id.* at 396 (citation modified). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The reasonableness determination must make allowances for the fact that police officers make split-second judgments in oftentimes tense situations. *Id.* at 396-97. Therefore, the United States Supreme Court has set out the reasonableness inquiry as one that requires courts to determine "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citation modified). The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Moreover, the Court's inquiry into the reasonableness of Officer Metz's conduct requires consideration of the totality of the circumstances. *County of Los Angeles v. Mendez,* 581 U.S. 420, 427-28 (2017). There is no time limit to the application of the totality of the circumstances. *See Barnes v. Felix*, 605 U.S. 73, 80 (2025). Instead, prior events may shed light on why a reasonable officer perceived otherwise ambiguous conduct as threatening or as innocuous. *Id*. This is because a "court deciding a use-of-force case cannot review the totality of the circumstances if it has put on chronological blinders." *Id*. at 82.

Aikens alleges that Officer Metz used unreasonable force when he performed a maneuver to take him to the ground.  There is no dispute that Aikens was handcuffed when Officer Metz brought him to the ground.  However, the circumstances leading up to this moment must be considered.  Officer Metz arrived on the scene at the pond after Aikens had physically resisted being arrested, resulting in a state trooper being knocked to the ground.  Aikens also fled the scene and ran through a residential neighborhood before submerging himself in a backyard pond to hide from the officers and avoid being arrested.  Even after he was discovered in the pond, and just seconds before he was brought to the ground, Aikens continued to refuse to move his arms to avoid being handcuffed.  And, after the officers handcuffed Aikens and began walking him up the hill, there is no dispute that Aikens stopped moving, bent over, and tensed up.  Based on these facts, and considering the totality of the circumstances, the Court finds that no reasonable juror could find that Officer Metz was objectively unreasonable in believing that Aikens was again resisting or that he was losing control over Aikens.  Therefore, it would not be unreasonable for Officer Metz to use some amount of force to get Aikens to comply or to regain control over him.

Aikens argues that even if Officer Metz's decision to use force was reasonable, fact issues remain as to whether the amount of force used was proportionate.  "Even when officers' goals are eminently reasonable, there are definite limits to the force officers may use to prod arrestees into obeying commands." *Locke v. County of Hubbard*, 152 F.4th 903, 910 (8th Cir. 2025) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 527 (7th Cir. 2012)).  Aikens claims that Officer Metz's actions were

counterproductive to his stated purpose of getting Aikens under control.  He also points to

his significant injury as evidence that the amount of force used was unreasonable.[3]

Aikens relies on several cases in support.  In *Montoya v. City of Flandreau*, the

Eighth Circuit declined to find that the use of a "leg sweep" was objectively reasonable

on summary judgment when it was used against a person whose actions, at most,

involved disorderly conduct but where the person "was not threatening anyone, was not

actively resisting arrest, and was not attempting to flee."  669 F.3d 867, 871 (8th Cir.

2012).  In addition, in *Shannon v. Koehler*, the Eighth Circuit affirmed a district court's

denial of qualified immunity in a case where an officer used force against an intoxicated

individual, but where the parties' versions of the facts preceding the use of force, and

specifically whether the plaintiff resisted or posed a threat to the officer, differed.  616

F.3d 855, 862 (8th Cir. 2010).  The court specifically noted that the record contained no

evidence, including surveillance videos, that contradicted the plaintiff's version, and

explained:

> Assuming, then, that [the plaintiff's] story is true—*i.e.*, assuming he was not
> threatening anyone, not resisting arrest, and so on—it is not reasonable for
> [the officer] to use more than de minimis force against him.  It follows, *a
> fortiori*, that using enough force to cause the injuries that [the plaintiff]
> alleges—a partially collapsed lung, multiple fractured ribs, a laceration to the
> head, and other various contusions—was also unreasonable.

---

[3]    Courts also consider the result of the force in analyzing a claim for excessive
force.  *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003).  The necessary
level of injury required for a Fourth Amendment excessive force claim is "actual injury."
*Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999).  There is no dispute that
Aikens suffered an actual injury.

*Id*. at 862-63 (citation omitted).  Further, in *Cartia v. Beeman*, the Eighth Circuit found that an officer was entitled to immunity for using a "hip-toss" to take and hold down an individual who had already interfered with a police investigation and was not cooperating.  122 F.4th 1036, 1041-42 (8th Cir. 2024).[4]  The Eighth Circuit, however, found that the same officer and another officer were *not* entitled to immunity for the plaintiff's allegations that they struck him while he was on the ground, slammed his head into the frame of a car door, and choked him, all while he was handcuffed and no longer resisting.  *Id.* at 1043.  The court accepted the plaintiffs' allegations because there was no recording of these events.  *Id*.

For his part, Officer Metz cites cases in support of the objective reasonableness of his actions.  In *Kohorst v. Smith*, the court found no constitutional violation for an officer's use of an "arm-bar takedown and the pushing down of" an arrestee who "at a minimum appeared to be resisting and was not complying with commands."  968 F.3d 871, 877 (8th Cir. 2020).  Similarly, in *Ehlers v. City of Rapid City*, the court found no constitutional violation for use of the "spin takedown" of an arrestee who appeared to be resisting and whose behavior was reasonably interpreted as noncompliant.  846 F.3d 1002, 1011 (8th Cir. 2017).

The facts of this case do not square perfectly with any of the above cases. *Montoya* and *Shannon* involve suspects who either did not physically resist arrest or flee,

---

[4]     Per the facts recited in the order, it appears that the takedown occurred just after or as the plaintiff was placed in handcuffs.  *Cartia*, 122 F.4th at 1039-40.

10

or where fact issues remained as to whether or not they did. In contrast, here, there is no dispute that Aikens both physically resisted and fled. Further, in contrast with the facts of *Cartia*, where there was no video evidence to show whether the individual resisted after being handcuffed, here the video shows that Aikens stopped walking when being escorted up the hill. However, the Court also recognizes that the cases cited by Officer Metz are not directly on point, as they do not involve suspects who were already in handcuffs at the time they were taken down.

The Court finds some direction from the Eighth Circuit's decision in *Blazek v. City of Iowa City*, 761 F.3d 920 (8th Cir. 2014). In that case, the court explained that it was clearly established that "when a person is subdued and restrained with handcuffs, 'a gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment." *Id.* at 925 (quoting *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006)). Examples of such gratuitous violence have included the use of pepper spray on a subdued arrestee or handcuffs applied so tightly that they break the wrist of an arrestee despite repeated complaints of pain. *Id.* at 925-26. In *Blazek*, the plaintiff had not been suspected of a criminal offense, had not resisted, and posed no threat to the officer, yet he alleged that after he was "handcuffed and under control," officers jerked him up by his arms with enough force to cause injury. *Id*. at 925. The court held that if plaintiff could prove that he was subdued and compliant, a reasonable jury could find a Fourth Amendment violation. *Id*. at 926. Similarly, in *Henderson*, the court denied qualified immunity on an officer's use of pepper spray on a handcuffed and subdued suspect

11

because, under the circumstances, the use of pepper spray may have been gratuitous and unnecessary. 439 F.3d at 503.

Here, while Aikens was in handcuffs when he was taken down, he had been suspected of a crime, physically resisted arrest, fled, hid in a pond, and continued to resist after being discovered. And when Aikens stopped walking, bent over, and tensed up, it was not unreasonable for Officer Metz to interpret this as further resistance or loss of control. In addition, the video evidence shows that when Officer Metz moved to bring Aikens to the ground, he, Aikens, and Trooper Hanson got tangled up and fell down together. This incident does not suggest the use of gratuitous violence. Instead, it was a maneuver to take Aikens down combined with unintentional slipping by all three men. Based on the evidence in the record and viewing that evidence in the light most favorable to Aikens, the Court concludes that no reasonable juror could conclude that Officer Metz used objectively unreasonable force.[5]

**B.      Clearly Established**

Even if the Court were to conclude that factual issues exist as to the question of whether Officer Metz used excessive force in violation of Aikens's Fourth Amendment

---

[5]      Aikens's injury was indeed significant. But the extent of his injuries alone does not make the use of otherwise reasonable force unreasonable. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("The governing rule should not turn on such unpredictable and fortuitous consequences of an officer's use of force."). Instead, the focus remains on whether the force applied is reasonable from the perspective of a reasonable officer on the scene. *Id.*

12

rights, Officer Metz would still be entitled to qualified immunity because it was not clearly established that the use of force was prohibited.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 63, 640 (1987). Clearly established law is not defined "at a high level of generality"; instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc) (citation modified).

Generally speaking, it was clearly established that an arrestee had a right to be free from the use of excessive force. *Chambers*, 641 F.3d at 908. It was not clearly established, however, that an officer would have violated the rights of an arrestee by taking him to the ground under the circumstances confronted by Officer Metz. Again, under Eighth Circuit law, "when a person is subdued and restrained with handcuffs, a gratuitous and completely unnecessary act of violence is unreasonable and violates the Fourth Amendment." *Blazek*, 761 F.3d at 925 (citation omitted). Aikens cannot show that he was compliant or subdued so as to fall squarely into the facts of *Blazek*. Nor can Aikens demonstrate the use of gratuitous or completely unnecessary violence. Instead, based on a discussion of the relevant cases above in relation to the facts here, Aikens cannot establish that Officer Metz's use of force violated a clearly established right such

13

that its unconstitutionality was beyond debate.  For this additional reason, Officer Metz is entitled to qualified immunity.

## CONCLUSION

The Court concludes that Officer Metz is entitled to qualified immunity on Aikens's excessive force claim and summary judgment in favor of Officer Metz is warranted.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendant Devinn Metz's motion for summary judgment (Doc. No. [22]) is **GRANTED**.

2.     Plaintiff's claim against Officer Metz is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 7, 2026                          s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge

14